# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MCCARTHY, | : | Civil No. 1:12-CV-2322 |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| DAVID EBBERT, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

I.  **Statement of Facts and of the Case**

   A.  **Introduction**

   This case comes before us on a petition for writ of habeas corpus filed by John McCarthy, an inmate housed at the United States Penitentiary, Canaan. In his petition McCarthy brings a claim which has not been administratively exhausted; namely, a complaint about the conditions of his confinement. In particular, McCarthy complains that he was housed in the prison's special housing unit after he exhibited odd, erratic and threatening behavior in the prison dining hall.

   For the reasons set forth below, it is recommended that this petition be denied.

   B.  **Statement of Fact and of the Case**

   In this case, the pertinent facts can be simply stated:

   The petitioner, John McCarthy is an armed career criminal who is currently serving a sentence of 235 months imprisonment for Possession of a Firearm by a

1

Prohibited Person, in violation of 18 U.S.C. §§ 922(g) and 924(e). ( Doc. 12, Att. A to Declaration of Donna Broome, Ex. 1 at 2.)

In October of 2012, McCarthy was housed at the United States Penitentiary, Canaan.  At that time, prison officials were investigating reports that McCarthy was acting erratically towards certain other inmates in the inmate dining hall. (Doc. 8, Declaration of Lt. Gintz. ¶ 4.) Due to his erratic behavior, McCarthy was placed in the prison's Special Housing Unit pending a review of his placement in General Population. (Id.) Subsequent investigation developed information indicating that McCarthy was angry at other inmates who were in the general population at USP Canaan, and that other inmates believed that McCarthy was causing a rift between different inmate groups. (Id.)

Based upon this information, prison officials concluded that McCarthy's behavior posed a serious threat to the safety and security of staff and inmates at USP Canaan, and it was recommended that McCarthy be kept separated from certain other inmates and referred for a transfer to another institution commensurate with his security and programming needs. (Id.) Accordingly, on October 16, 2012, McCarthy was placed in an Administrative Detention ("AD") cell within the Special Housing Unit pending completion of the prison's internal investigation. (Id., Declaration of Erika Fenstermaker Ex. 2. ¶ 3; Administrative Detention Order Att. A. to Ex. 2.) McCarthy has remained in administrative detention at the United States Penitentiary

Canaan, where he continues to receive all requisite periodic Special Housing Unit custody reviews. (Id., Declaration of Erika Fenstermaker Ex. 2. ¶ 3; Attach. B-D.) In fact, McCarthy's custody status was reviewed at least five times between October and December 2012. (Id.) While prison officials have taken these security measures with respect to McCarthy, they have not disciplined him. In fact, prison records demonstrate that McCarthy was not subjected to disciplinary action for any dining hall incident that occurred on or around October 16, 2012. (Id., BOP SENTRY Report, Inmate Discipline Data Att. C to Ellington Decl. Ex. 1.)

At the time of these events, the Bureau of Prisons also had a three-level administrative remedy process in place that must be fully exhausted before an inmate can bring an action in federal court. See 28 C.F.R. §§ 542.10, et seq. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." Id. at § 542.10(a). "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." Id. at § 542.10(c). In order to exhaust appeals under the BOP's administrative remedy procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. Id. at § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form and bring the matter to the attention of the warden. Id. at §542.14. The warden

is then to respond to the inmate's complaint within 20 calendar days. If the inmate is dissatisfied with the warden's response, he may then appeal to the BOP Regional Director within 20 calendar days. Id. at § 542.15(a). If the response of the BOP Regional Director is not satisfactory, the inmate may then appeal to the BOP Central Office within 30 calendar days, which office is the final administrative appeal in the BOP. Id. An exception is made for appeals of decisions of a discipline hearing officer ("DHO"), such as in the instant case, which are first raised directly to the BOP Regional Office and then to the BOP Central Office. 28 C.F.R. §542.14(d)(2). No administrative remedy appeal is considered to have been fully exhausted until rejected by the BOP Central Office. Id. at § 542.15(a).

The Bureau of Prisons maintains a record of inmate grievances. A review of McCarthy's administrative remedy records revealed that McCarthy failed to exhaust any of the issues raised in this petition. (Id., Ellington Decl. Ex. 1 ¶ 4.) Specifically, from January 1, 2012, through December 13, 2012, McCarthy attempted to file six administrative remedy requests and/or appeals.(Id. ¶ 7; Administrative Remedy Report Att. B to Ellington Decl. Ex. 1.) Of these six grievances, five were filed prior to October 16, 2012, the date upon which McCarthy alleges he was denied due process. The only administrative remedy filed by McCarthy after October 16, 2012 was an unrelated appeal of disciplinary action taken by a Unit Discipline Committee filed at the institution level. (Id. at 7.) Thus, McCarthy has never grieved this prison placement

4

decision. Instead, McCarthy elected to file the instant federal habeas corpus petition. (Doc. 1.)

## II. Discussion

### A. The Exhaustion Doctrine Bars Consideration of This Habeas Petition.

At the outset, this petition suffers from a fundamental procedural flaw, since the petitioner has failed to properly exhaust his administrative remedies within the federal prison system. Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). These exhaustion rules serve an important and salutary purpose. The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that McCarthy has not fully exhausted his administrative remedies, since McCarthy neglected to fully prosecute this grievance through the three-tier grievance process prescribed by prison regulations. Thus, this case presents the very paradigm of an unexhausted petition. With respect to unexhausted habeas claims like those presented by here, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . . .' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, courts have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully exhaust their administrative remedies. See, e.g.,Johnson v. Williamson, 350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009); Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996).

As this court has previously explained when dismissing a federal prisoner's habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D.Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his

> complaint with the warden of the institution where he is confined. 28 C.F.R. § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. 28 C.F.R. §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008).

This exhaustion rule in federal habeas corpus proceedings is also subject to a procedural default requirement. "[A] procedural default in the administrative process bars judicial review because 'the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar.' Sanchez, 792 F.2d at 698. We require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Bradshaw, 682 F.2d at 1052; see also Schlesinger v. Councilman, 420 U.S. 738, 756-57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975) (exhaustion avoids duplicative proceedings and insures that judicial review will be informed and narrowed); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) (circumvention of administrative process diminishes

effectiveness of an agency by encouraging prisoners to ignore its procedures). Requiring petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996) For these reasons, "a federal prisoner who. . . , fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Id.

This basic legal tenet applies here and is fatal to McCarthy's habeas corpus petition. With respect to his complaints in this petition McCarthy is an inmate who has failed to exhaust his remedies, and now fails to provide cause and prejudice which excuses this earlier procedural default. Therefore, McCarthy's unexhausted claims should be dismissed.

In any event, even if we accepted McCarthy's claim that his failure to exhaust should be excused, this petition should still be denied because, as discussed below, this petition fails on its merits.

**C.   This Petition Fails on Its Merits Since McCarthy May Not Use This Petition To Challenge The Conditions of His Confinement**.

To the extent that McCarthy endeavors to use this petition to complain about the current conditions of his confinement, McCarthy may not make such a claim in this

habeas corpus petition. The writ of habeas corpus, one of the protections of individual liberties enshrined in our Constitution, serves a specific, and well-defined purpose. The writ of habeas corpus exists to allow those in the custody of the state to challenge in court the fact, duration and lawfulness of that custody. As the United States Court of Appeals for the Third Circuit has aptly noted: "The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.' " Powers of Congress and the Court Regarding the Availability and Scope of Review, 114 Harv. L.Rev. 1551, 1553 (2001)." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002). However, there is a necessary corollary to this principle, one which has long been recognized by the courts; namely, "[i]f a . . . prisoner is seeking [other relief], he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release-the traditional purpose of habeas corpus. In [such cases], habeas corpus is not an appropriate or available federal remedy." Preiser v. Rodriguez, 411 U.S. 475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of the conditions of his confinement unrelated to the fact or duration of his detention, courts

have repeatedly held that the writ of habeas corpus is not the proper vehicle for bringing this legal challenge. For example, in Leamer v. Fauver the United States Court of Appeals discussed whether a habeas corpus petition was the appropriate tool for an inmate to use when challenging a prison disciplinary placement decision, like the decision at issue in this case. In terms that are equally applicable here the Court of Appeals held that these type of claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of Supreme Court jurisprudence clarifying when [habeas and other civil rights relief] is unavailable: whenever the challenge ultimately attacks the "core of habeas" -the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542 .

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to examine prison conditions and placement decisions. Without exception, these invitations have been declined by the courts as a legal exercise which fall beyond the scope of habeas corpus jurisdiction. See e.g., Dickerson v. Diguglielmo, 306 F. App'x 707 (3d Cir. 2009); Jupiter v. Warden, U.S.P. Lewisburg, 237 F. App'x 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x 172 (3d Cir.

2006); Beckley v. Miner, 125 F. App'x 385 (3d. Cir 2005); Bronson v. Demming, 56 F App'x 551, 553-554 (3d Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in a properly filed civil rights complaint).

These settled legal tenets control here and are fatal to these condition of confinement claims in McCarthy's habeas petition. Since it is well established that these types of complaints simply do not sound in habeas, this petition must be dismissed. McCarthy's recourse, if any, would be through a Bivens civil rights action challenging these prison conditions. However, because the filing requirements for habeas and Bivens actions differ, and the two types of actions raise different issues in terms of procedural requirements and substantive standards, it would not be appropriate to simply construe this pleading, which was clearly designated as a habeas petition, as a Bivens action. Instead, it is recommended that this petition be dismissed without prejudice to McCarthy filing a separate action under Bivens, if he chooses to do so. Woodruff v. Williamson, No. 06-2310, 2009 WL 703200, at *6 (M.D. Pa. March 12, 2009)(dismissing habeas petition challenging SMU placement without prejudice to separate Bivens civil action).

### III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the merits of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of March 2013.

S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge